IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL T. ROSS,

                        Plaintiff,

  v.                                                 OPINION and ORDER

WOOD COUNTY, SHAWN BECKER,
REBECCA BAKER, THOMAS KING, ALLI NELSON,        20-cv-546-jdp
and SOUTHERN HEALTH PARTNERS INC.,

                        Defendants.

---

Plaintiff Michael T. Ross, represented by counsel, alleges that Wood County jail staff violated his constitutional rights by refusing to provide him prompt medical treatment for his broken hand and by managing his Suboxone withdrawal unreasonably. Ross sued jail nurse Alli Nelson and her employer, Southern Health Partners Inc., which manages inmate health care at Wood County jail. Ross also sued Wood County, Sheriff Shawn Becker, and jail correctional officers Rebecca Baker and Thomas King.

Defendants have moved for summary judgment. The motion filed by the Wood County defendants (Wood County, Sheriff Shawn Becker, Rebecca Baker, and Thomas King), Dkt. 76, will be granted. Ross abandoned his claims against Wood County and Sheriff Becker, and no reasonable jury could conclude that Officer Baker or Officer King acted unreasonably in responding to Ross's complaints of hand pain. The motion filed by Southern Health Partners and Nurse Nelson, Dkt. 83, will be granted in part and denied in part. Ross has failed to submit evidence to support a claim against Southern Health Partners or Nelson relating to management of Ross's Suboxone withdrawal. But there are genuine factual disputes regarding Nelson's treatment of Ross's hand injury that must be resolved by a jury. So the motion will

be granted on all of Ross's claims except his Fourteenth Amendment claim against Nelson relating to treatment of his hand.

## UNDISPUTED FACTS

### A. The parties and background

Plaintiff Michael T. Ross was arrested at his home by Wisconsin Rapids police officers on February 13, 2020, and he was taken to Wood County jail. Defendants Thomas King and Rebecca Baker worked for Wood County Sheriff's Department as correctional officers at the time.

In February 2020, Advanced Correctional Healthcare, a private company and not a defendant in this case, provided health care for inmates at the jail. Defendant Alli Nelson worked for Advanced Correctional Healthcare as a licensed practical nurse at the jail. In March 2020, defendant Southern Health Partners replaced Advanced Correctional Healthcare as the inmate medical care provider. Nelson continued working as a nurse at the jail under Southern Health Partners. Kristine Metz, a nurse practitioner who is not a defendant in this case, was the primary care provider at the jail starting in March 2020.

### B. Ross's hand injury

Defendants Officer King and Officer Baker booked Ross into the jail on February 13, 2020. Officer Baker asked Ross several medical screening questions, including whether Ross was sick or injured in any way. Ross responded that he had a history of mental health problems. He did not mention hand pain or any other physical injury to jail staff. Ross completed the booking process without difficulty, including fingerprinting, and neither Officer Baker nor Officer King noticed any injury to Ross's hands. (According to Ross, the police officers who

arrested him on February 13, 2020, broke his right hand during the arrest. He says that his hand was broken and hurting when he arrived at the jail, and that he reported hand pain to jail staff when he was booked. But the audio and video footage from the arresting officers' body cameras and jail surveillance video show that Ross did not report a hand injury to jail staff during the booking process. The footage also shows that Ross was able to move his right hand without apparent difficulty, and that there was no obvious injury to the hand. Ross withdrew his claims against the arresting officers, Dkt. 31, so it is immaterial to the outcome of Ross's remaining claims whether the officers broke his hand. But, as discussed below, whether Ross's injury was obvious and whether he reported it to jail staff is highly relevant.)

After the booking process was complete, Ross was transferred to a holding cell in the receiving area of the jail and was put on a mental health watch. Jail staff checked on him every 30 minutes. While Ross was in the holding cell, Officer King heard a thud on a wall from the direction of Ross's cell. King and the jail sergeant went to Ross's cell to investigate. The sergeant asked what happened, and Ross responded that his hand was "messed up." King noticed that one of Ross's hands was red and swollen, and he asked whether Ross had punched the wall and whether he could move his hand. Ross said that his hand hurt, but King did not think that Ross appeared to be in serious physical pain or distress. King told Ross to complete an inmate health service request form to see a nurse, which was the standard procedure by which inmates at the jail obtained medical care for non-urgent problems. (Ross says that King also told him that he would notify medical staff. King denies saying this, and states that there was no medical staff at the jail at that time of day.)

While Ross was still in the holding cell, Officer Baker permitted Ross to use the telephone. She heard Ross tell the person with whom he was speaking that the arresting officers

3

had broken his hand. Officer Baker doubted that this was true because Ross had not reported any hand injury during the booking process, and he did not appear to be in physical pain or distress. But Baker noticed that Ross's right hand was red at the knuckle of the pinky finger, and she reported what Ross had said about his hand to Officer King. (Officer Baker denies that she spoke to Ross about his hand. Ross testified at his deposition that he complained to Officer Baker about his hand while he was in the holding cell, though he could not remember when he complained to her or what she said in response. Ross Dep., Dkt. 74, at 28–30, 45. He also testified that he did not remember making a phone call. *Id.* at 48. He submitted a declaration with his summary judgment opposition materials stating that he talked to Officer Baker about his hand after he spoke to his wife on the telephone, and that he told both Officer Baker and Officer King that he was in "extreme pain." Ross Decl., Dkt. 90, ¶¶ 1, 2.)

Ross's mental health watch was discontinued the following day, on February 14, and he was transferred to a cell block. By this time, his hand was swollen and painful. (Ross says that he continued to complain to Officer Baker and Officer King about his hand from February 14 to 17, but the officers submitted undisputed evidence showing that they did not work at the jail between February 14 and 17, 2020. *See* Ashbeck Decl., Dkt. 97.) A nurse came to see Ross about his medications, and she ordered Tylenol for him. (It is not clear from the record whether the nurse was defendant Nurse Alli Nelson, or someone else, or whether the Tylenol was ordered for Ross's hand or for another reason. Ross says that he told Nurse Nelson every day during medication pass that he was in horrible pain, that he showed her his hand, which had swollen to four times the size of his other hand, and that he told her that he could use only two fingers on his right hand. He also says that Nelson told him that his hand was likely broken.

4

Nelson does not recall when she first spoke to Ross about his hand, but she states that she would not have examined him or told him that his hand was broken at his cell front.)

At some point during the next couple of days, Ross completed an inmate health service request form. On the form, which is undated, he wrote that a police officer had broken his right hand, that his hand was swollen and sore, that he could not really move it, and that he had "asked several times, but nothing has been done." Dkt. 91-4. Nurse Nelson saw Ross in the health services unit on February 17. According to Nelson, the February 17 visit would have been scheduled in response to a health service request. Nelson says, and Ross does not dispute, that she would have seen Ross within 24 hours of receiving the health service request.

Ross told Nelson that he was in horrible pain, had limited use of his hand, and needed to see a doctor. Nelson noted that Ross's right hand was visibly bruised and swollen, and that Ross could bend only his thumb and pointer finger. (Ross says that Nelson told him that his hand was broken, but Nelson denies that she said this and states that she was not qualified to diagnose a broken hand.) Nelson scheduled an x-ray and gave Tylenol to Ross to help with the pain and inflammation. (Ross asserts that the jail had access to a traveling x-ray machine that could have been brought to the jail to x-ray his hand on February 17. But the only evidence he cites for this assertion is the deposition testimony of Nurse Practitioner Metz, who stated that Wood County jail could contact a traveling x-ray technician, but that she did not know how quickly or how frequently the technician could come to the jail. Metz Dep., Dkt. 93, at 12. Metz's testimony does not establish that jail staff could have arranged for an x-ray on February 17.)

Ross was taken to the hospital the next day, on February 18, for an x-ray of his hand. The hospital physician diagnosed a fracture at the base of Ross's right fifth metacarpal. Dkt.

5

74-6, at 1. An orthopedic specialist was consulted about the fracture, Ross's hand was splinted, and he was scheduled for an orthopedic appointment the following week. *Id.* at 4. The doctor told Ross to alternate between Tylenol and ibuprofen as needed for pain. *Id.* at 5.

Ross saw an orthopedic surgeon on February 28, 2020, and his hand was placed in a cast. At a follow-up appointment with the orthopedic surgeon on March 13, Ross reported that he did not need medication for pain management, and the surgeon noted that Ross could move all of his fingers. He had a final orthopedic visit on March 31, at which Ross reported no problems, and the surgeon noted that Ross's fracture was fully healed with "normal hand and finger joint alignment." Dkt. 82-4, at 7–8.

**C. Management of Suboxone**

When Ross entered Wood County jail in February 2020, he was taking Suboxone to manage an opioid addition. Four days after his arrest and incarceration, Ross met with Karen Horton, a nurse practitioner, who worked for Advanced Correctional Healthcare. (Horton is not a defendant in this action.) Horton ordered that Ross should be weaned off Suboxone. Few advanced care providers were legally authorized to prescribe Suboxone at that time, so inmates arriving at the jail with Suboxone prescriptions were routinely tapered off the medication. She set a schedule to taper Ross's Suboxone, starting immediately, which would result in Ross being completely off Suboxone by April 6, 2020. Dkt. 74-4.

When defendant Southern Health Partners took over medical care at the jail on March 1, 2020, Ross was on the tapering schedule already. He was experiencing various Suboxone withdrawal symptoms, including depression, anxiety, agitation, nausea, vomiting, abdominal pain, diarrhea, sweating, and joint pain. Nurse Practitioner Metz, who replaced Nurse Practitioner Horton, did not have the legal authority to prescribe Suboxone, and she did not

have the authority to change Ross's tapering protocol. Metz Dep., Dkt. 93, at 39. But Metz prescribed several medications to mitigate Ross's Suboxone withdrawal symptoms, including medication for joint pain, abdominal pain, anxiety, nausea, vomiting, and diarrhea.

Between April 7 and 20, 2020, after Ross's Suboxone had been discontinued completely, Ross complained repeatedly about withdrawal symptoms. He complained about extreme pain and restlessness, diarrhea, neuropathy, and the inability to eat, drink, or sleep. He submitted numerous health service requests and grievance forms stating that he had not eaten in days, that he was deathly sick, that he felt like he was living a nightmare and his body was burning, and that he had heart problems and was worried that he would have a heart attack. Nurse Nelson received and reviewed several of Ross's grievances and updated Nurse Practitioner Metz regarding Ross's complaints and concerns. Nelson or another member of medical staff met with Ross each day to monitor his vitals during this period. Nelson noted Ross's agitation and complaints, but also noted that his vitals were generally stable and that his weight was not concerning despite his reports that he was not eating. On one occasion when his blood pressure was elevated, Nelson ordered that Ross be taken to the hospital to be examined.

## OPINION

Ross contends that Wood County jail staff failed to respond promptly or effectively to his serious medical needs, causing him to suffer severe and unnecessary pain and complications. The individual defendants seek summary judgment on the ground that their actions were objectively reasonable under the circumstances. Defendants King and Baker also argue that qualify immunity shields them from money damages. Southern Health Partners argues that

Ross cannot prove that it had any unconstitutional policy or practice that caused a violation of his rights.

Ross was a pretrial detainee at Wood County jail during the relevant time period, so his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). A jail official violates the Fourteenth Amendment if: (1) the official acted purposefully, knowingly, or recklessly when the official considered the consequences of his or her actions; and (2) the official's actions were objectively reasonable. *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 350–53 (7th Cir. 2018).

### A. Officer Baker and Officer King

Ross contends that Officer Baker and Officer King acted unreasonably by failing to seek emergency care for his broken hand on February 13, 2020. To withstand summary judgment on his Fourteenth Amendment claim, Ross must submit evidence showing that Officer Baker and Officer King were aware or strongly suspected that their failure to arrange prompt medical care for Ross would lead to harmful results. *See Pittman by & through Hamilton v. Cty. of Madison, Illinois*, 970 F.3d 823, 828 (7th Cir. 2020) ("[I]f the defendants 'were aware' that their actions would be harmful, then they acted 'purposefully' or 'knowingly'; if they were not necessarily 'aware' but nevertheless 'strongly suspected' that their actions would lead to harmful results, then they acted 'recklessly.'"). Ross also must submit evidence showing that the officers' failure to do more for him was objectively unreasonable. *Id.*

Ross has not satisfied his burden. Based on the video evidence, it is undisputed that when Ross arrived at Wood County jail, his hand was not obviously injured, he did not complain of hand pain or injury during the booking process, and he appeared to be using his

hands normally. So when Officer Baker overheard Ross tell someone on the phone that a police officer had broken his hand, it was reasonable for her to conclude that Ross did not need immediate medical attention. His statement about having a broken hand contradicted the information that Officer Baker had gathered from Ross during the booking process, and although Ross's knuckle was red, he did not appear to be in pain or distress. *See Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2004) ("The Constitution does not oblige guards to believe whatever inmates say.").

It was also reasonable for Officer King to conclude that Ross's hand injury, which appeared after King heard a thud on the wall, did not require an after-hours call to a medical provider or a trip to the emergency room. Ross told Officer King that his hand was "messed up," and he displayed red and swollen knuckles. King concluded reasonably that Ross might have hurt his hand by punching the wall and that he should request medical care using the normal health request process. Both King and Baker knew that Ross would be seen by a jail nurse no later than the following day, as Ross was on prescription medications that the nurse would have to provide to him, and that Ross could raise any ongoing medical problems with the nurse at that time.

Ross argues in his brief that Officer Baker and Officer King should have contacted the on-call jail nurse or requested that Ross be taken to the hospital for emergency treatment because his hand was red and swollen and because he told them that his hand was in "extreme pain." Dkt. 86, at 2. But Ross's red and swollen hand and alleged complaint of extreme pain are not sufficient evidence to show that either officer was aware, or strongly suspected, that their failure to arrange emergency medical care for Ross's hand would lead to harmful results. *See Pittman by & through Hamilton*, 970 F.3d at 828. Ross provides no information about the

9

context in which he told the officers that he was in "extreme pain." Nor does he submit evidence that either officer saw him displaying physical or behavioral manifestations of his extreme pain that would have caused them to believe that he was in severe physical distress. Instead, Ross testified at his deposition that he showed Officer King his hand and said, "It hurts." Ross Dep., Dkt. 74, at 31. He testified that he held up his hand to Officer Baker and said, "My hand hurts. Look." *Id.* at 29. No reasonable jury would conclude that either Officer King's or Officer Baker's conclusion that Ross's hand pain did not require emergency care was objectively unreasonable. So Officer Baker and Officer King are entitled to summary judgment.

### B. Nurse Alli Nelson

Ross contends that Nurse Nelson violated his constitutional rights by (1) failing to provide prompt treatment for his broken hand, and (2) failing to provide adequate pain relief for his Suboxone withdrawal symptoms.

#### 1. Hand injury

Ross argues that Nurse Nelson ignored his complaints of hand pain for several days, despite his telling her during medication pass on February 14, February 15, and February 16, that his hand hurt, that it was broken, that he could not move his fingers, and that he needed to see a doctor. Ross also says that his right hand was swollen to four times the size of his left hand, and that Nelson felt his right hand and told him that it was broken. He argues that she acted unreasonably by refusing to contact a doctor, send him to the hospital, or provide him anything beyond Tylenol. Nelson does not recall Ross complaining about his hand before his February 17 appointment, and she denies that she would have told him that his hand was broken. But for purposes of summary judgment the court must accept Ross's version of events as true. *See Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014) ("We must . . . construe the

record in the light most favorable to the nonmovant and avoid the temptation to decide which party's version of the facts is more likely true.").

The question under the Fourteenth Amendment, then, is whether Nelson acted purposefully, knowingly, or recklessly when she considered the consequences of giving only Tylenol to someone who likely had a broken hand, and whether her decision to provide only Tylenol to Ross and her refusal to arrange additional treatment for three days was objectively unreasonable. *See McCann*, 909 F.3d at 886. Nelson argues that a jury could not conclude, without expert medical testimony, that her failure to provide additional treatment or refer Ross to a doctor or the emergency room was objectively unreasonable. But the court disagrees. Nelson has not suggested that it would be appropriate to provide only Tylenol to someone complaining of the symptoms that Ross describes. A lay jury could conclude that if a patient's hand has swollen to four times its normal size, the patient says that he is in horrible pain and cannot use his fingers, and a nurse has acknowledged a potential break, then that nurse should do something more than provide Tylenol to the patient. A reasonable jury could conclude that Nelson's failure to contact an advanced care provider, refer plaintiff to the hospital, or provide ice or protection for Ross's hand, such as a splint, was objectively unreasonable.

It is a different question whether Ross could prove at trial that the three-to-four-day delay in treatment made him ineligible for a surgical intervention and caused a permanent injury and weakness in his hand. Ross has submitted no evidence to support this assertion, and he would need medical expert testimony to prove that delayed treatment caused permanent harm. But that is a damages issue that the court need not decide to resolve the pending summary judgment motions. At this stage, it is enough to conclude that a reasonable jury could find that Nelson's alleged actions caused an unwarranted delay in treating Ross's broken hand.

11

Even a brief delay in treatment can violate the constitution "if it exacerbated the inmate's injury or unnecessarily prolonged his pain." *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007).

### 2. Suboxone withdrawal

Ross also contends that defendant Nurse Nelson violated his constitutional rights by failing to properly manage his Suboxone withdrawal symptoms. He says that Nelson knew he was suffering from multiple severe symptoms, including pain, nausea, dehydration, sleeplessness, and agitation, but that she failed to arrange relief for him by contacting an advance care provider or sending him to the hospital.

This claim fails because the undisputed evidence shows that Nurse Nelson acted reasonably within her role as a licensed practical nurse. Nurse Nelson did not make the decision to wean Ross from Suboxone, and she had no authority to change that decision. Nor did Nelson have authority to prescribe medications or treatments to mitigate Ross's withdrawal symptoms. In her position as a nurse, Nelson could receive Ross's concerns and complaints, observe his symptoms, measure his vital signs, and report information to an advance care provider. The evidence shows that Nelson consistently performed all of these tasks for the duration of Ross's Suboxone taper and subsequent withdrawal period. Nelson communicated regularly with Nurse Practitioner Metz regarding Ross's condition and complaints, and Metz prescribed multiple medications to help mitigate Ross's symptoms.

Ross argues that Nelson should have sent him to the emergency room for treatment when he was experiencing severe pain. He also argues that Nelson should not have relied on Metz's judgment when it was obvious that Metz's treatment protocol was not working for Ross.

But Ross does not explain what treatment he would have received at the emergency room that would have been different from the treatment that Metz had prescribed already. And in contrast to Ross's claim regarding a broken hand, a lay jury would not be able to determine without medical expert testimony whether Metz was managing Ross's Suboxone withdrawal appropriately and what actions Nurse Nelson could or should have taken under the circumstances. So Nelson is entitled to summary judgment on this claim.

## C. Southern Health Partners

Ross also has not shown that Southern Health Partners should be liable for failing to properly manage his Suboxone wean and withdrawal symptoms. To succeed on a constitutional claim against Southern Health Partners, Ross would have to show that his constitutional rights were violated as a result of an official policy, a custom, or a decision by a "final decisionmaker," that is, someone who has the final say on policy. *See Pulera v. Sarzant*, 966 F.3d 540, 555 (7th Cir. 2020); *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017). Because Ross has not shown that his constitutional rights were violated in conjunction with his Suboxone wean, his claim against Southern Health Partners fails. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, (1986) ("If a person has suffered no constitutional injury . . . the fact that the departmental regulations might have authorized [unconstitutional conduct] is quite beside the point."). So Southern Health Partners is entitled to summary judgment.

## CONCLUSION

The case will proceed to trial on Ross's claim that Nurse Nelson violated his Fourteenth Amendment rights by failing to provide or arrange adequate treatment for his broken hand. Summary judgment will be granted to defendants on all other claims.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Rebecca Baker, Shawn Becker, Thomas King, and Wood County Wisconsin, Dkt. 76, is GRANTED.

2. The motion for summary judgment filed by defendants Southern Health Partners, Inc. and Alli Nelson, Dkt. 83, is GRANTED IN PART and DENIED IN PART. It is GRANTED with respect to plaintiff Michael Ross's claim against Southern Health Partners Inc. and his claim against Nelson relating to treatment for his Suboxone withdrawal. The motion is DENIED in all other respects.

Entered April 22, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge